UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN P. MCDONNELL,<br><br>         Appellant and Cross-Appellee,<br><br>v.<br><br>WILLIE JOHN RILEY,<br><br>         Appellee and Cross-Appellant. | Case No. 15-cv-01832-BLF<br><br>**ORDER (1) DENYING APPELLANT'S LEAVE TO APPEAL BANKRUPTCY COURT ORDER AND (2) DENYING CROSS-APPELLANT'S LEAVE TO CROSS-APPEAL BANKRUPTCY COURT ORDER** |

Appellant John P. McDonnell seeks leave to appeal a November 6, 2014 order of the Bankruptcy Court ("order") denying in part McDonnell's motion for summary judgment in an adversary proceeding. McDonnell Opening Br. 1, ECF 12. Appellee Willie John Riley cross-appeals and asks this Court to reverse a portion of the order granting in part McDonnell's motion for summary judgment. For the reasons stated below, the Court finds that the order at issue is not an appealable final order within the meaning of 28 U.S.C. § 158(a)(1), nor do the circumstances of this case warrant interlocutory review pursuant to 28 U.S.C. § 158(a)(3). Accordingly, the Court DENIES both McDonnell's leave to appeal and Riley's leave to cross-appeal the Bankruptcy Court's order.

## I. BACKGROUND

Between 2004 and 2006, Riley retained McDonnell, an attorney, regarding litigation over a house in San Juan Bautista, California, litigation for misappropriation of trade secrets, and litigation against two of Riley's former attorneys. Op.[1] 6, ECF 8-3. During this time, Riley and McDonnell never entered into a written fee agreement. *Id*. By the end of 2006, Riley had accumulated approximately $104,000 in legal fees. *Id*.

What happened next is disputed by the parties. According to McDonnell, in February 2007, Riley offered to provide security for his unpaid legal bills in the form of a lien on his home located at 3604 Cobbert Street, San Jose, California ("Property"). *Id*. at 7. McDonnell claims that he advised Riley of the rules regarding dealings between an attorney and client, first verbally, and then by e-mail on February 21, 2007. *Id*. at 7; Exh. F to McDonnell Decl., ECF 11-4 (February 21, 2007 e-mail from McDonnell to Riley). On March 5, 2007, Riley met with McDonnell and signed a promissory note for $125,000 secured by a deed of trust encumbering Riley's Property. Op. 7, ECF 8-3; Exh. H to McDonnell Decl., ECF 11-4 (promissory note and deed of trust). The deed of trust had been incorrectly notarized, so Riley and McDonnell executed the deed of trust a second time on March 28, 2007 and it was recorded on May 3, 2007. Op. 7, ECF 8-3.

Riley, meanwhile, claims at the March 5, 2007 meeting, McDonnell said that he would never take Riley's Property and placed significant pressure on Riley to sign the documents. *Id*. at 8. Riley also claims that he expressed reservations about granting the deed of trust to McDonnell and told McDonnell that he would only sign the deed of trust on the understanding that it was not part of the deal. Riley Decl. ¶ 5, ECF 10-8. After allegedly being reassured by McDonnell that he would never take Riley's Property, Riley signed the promissory note and deed of trust. Op. 8, ECF 8-3.

After signing the promissory note and deed of trust, McDonnell continued to perform legal services on Riley's behalf throughout 2008 and into 2009. *Id*. at 9. By the end of 2008, Riley's unpaid legal fees totaled $210,000. *Id*.

---

[1] "Op." refers to the bankruptcy judge's November 6, 2015 order located at ECF 8-3.

In February 2009, after Riley missed a scheduled payment, McDonnell and Riley started exchanging a series of e-mails regarding payment that lasted throughout 2009. Starting in February, McDonnell sent Riley an e-mail requesting delivery of the missed payment and informing Riley that any further missed payments would require McDonnell to withdraw as his attorney. Exh. J to McDonnell Decl, ECF 11-4. McDonnell's February 12, 2009 e-mail stated:

> As I said before; all th[at] counts now is cash. I need it, and I need to take the steps to get it. That means getting out of your cases and initiating a collection action. I am starting that process immediately. I am sending you a Notice of Right to Arbitrate…

*Id.* Along with this e-mail, McDonnell sent Riley a Notice of Client's Right to Arbitrate a Fee Dispute. Op. 9, ECF 8-3.

On February 18, 2009, Riley sent McDonnell an e-mail, which stated:

> Suing me on my house with that $500,000.00 IRS lien only puts you in third place and I almost wish someone would take that amount off of my back. This is insane and you are once again looking into my wallet and seeing something that is not there.

Exh. E to McDonnell Supp. Decl., ECF 11-10.

On July 22, 2009, McDonnell sent Riley an e-mail, which stated:

> I know this is the worst time to hear this, but I have no choice but to call the loan. When we did this in March 2007 we expected to get the bill handled in 6 months or so. We are now over 2 years out, and I can't go any further.
>
> Please immediately look into what you can do to refinance your place on Cobbert and get my loan paid off. Incidentally, the IRS does not have a lien on Cobbert.
>
> Realistically, I need to have you resolve this in 30 days, or I have to take action. Naturally, I would prefer to avoid that, but it is no longer a matter of choice. Please contact some banks as soon as possible and let me know what you will be able to do.

Exh. K to McDonnell Decl., ECF 11-4.

On October 9, 2009, McDonnell sent Riley another e-mail, which stated:

> In addition, as I told you last month, I have run out of money and out of credit. I have not been able to pay my son's tuition. I am 3 months behind

3

> in rent and other payments here at my office. That's why I told you I am calling the loan. I don't want to move against your house, but you are leaving me no choice.

Exh. H to McDonnell Supp. Decl, ECF 11-10.

McDonnell does not indicate that Riley made any further payments after the July 22, 2009 e-mail. Despite this, McDonnell continued to serve as Riley's lawyer and did not seek to withdraw as his lawyer until 2010. McDonnell Decl. ¶ 26, ECF 11-4. In May 2010, the San Benito County Court granted McDonnell's request to withdraw from representing Riley in a case, and in July 2010, the Santa Clara County Court did the same. *Id*.

In September 2010, McDonnell transferred the promissory note and deed of trust to Playforge LLC for $140,000. *Id*. at ¶ 28. In October 2010, Playforge recorded a notice of default and in November 2012, Playforge recorded another notice of default. *Id*. A trustee's sale was set for May 10, 2013 but Riley filed for bankruptcy on May 8, 2013. *Id*. Playforge then sold the promissory note and deed of trust to the Mackin Trust for $140,000.

On August 13, 2013, Riley filed an adversary proceeding containing causes of action for (1) fraud/negligent misrepresentation regarding McDonnell's alleged promise never to take Riley's Property, (2) cancellation of the promissory note and deed of trust because McDonnell's failure to have a written fee agreement violated Cal. Bus. & Prof. Code § 6148; (3) cancellation of the promissory note and deed of trust because McDonnell failed to tell Riley to seek independent counsel and pressured Riley to sign the promissory note and deed of trust in violation of the California Rules of Professional Conduct; (4) cancellation of the note and deed of trust because McDonnell alleged in his state court complaint that Riley owed $102,092 and not the $125,000 amount of the promissory note and deed of trust, and (5) declaratory relief that Riley owes nothing to McDonnell and cancelling the promissory note and deed of trust; and (6) injunctive relief enjoining the foreclosure sale. Riley Compl. ¶¶ 1-70, ECF 10-1. McDonnell moved for summary judgment on May 2, 2014.

Pertinent to this order are the Bankruptcy Court's denial of summary judgment on Riley's first cause of action and grant of summary judgment on his second cause of action. As to Riley's first cause of action for fraud, McDonnell argued that it was barred by the three year statute of

4

limitations. Reply to SJ 8-10, ECF 11-3. According to McDonnell, because of the series of e-mails exchanged between the parties in February, July, and October of 2009, Riley was on notice of any potential fraud by October 2009, and his August 2013 complaint would be outside the statute of limitations. *Id.* As to Riley's second cause of action for cancellation of the promissory note and deed of trust, McDonnell argued that Riley cannot cancel the promissory note and deed of trust under Cal. Bus. & Prof. Code § 6148. *Id.* at 10-11. According to McDonnell, the only sanction for failing to have a written fee agreement under § 6148 is that the attorney is limited to collect a reasonable fees from the client; it does not allow for the invalidation of a promissory note and deed of trust. *Id.* at 11.

In a tentative ruling, the Bankruptcy Court found the October 9, 2009 e-mail put Riley on actual notice of fraud. Tentative Op. 11, ECF 11-11. The Bankruptcy Court, however, ordered additional briefing on whether any damage had accrued to Riley by October 2009. *Id.* at 14. With respect to Riley's second cause of action, the Bankruptcy Court agreed with McDonnell and found that assuming Cal. Bus. Prof. Code § 6148 was violated, the statute "imposes no sanctions on an attorney who lacks a written fee agreement, other than limiting the attorney to recovery of a reasonable attorney's fee." *Id.* at 13. Since Riley did not allege the fees charged by McDonnell were unreasonable, nor any authority that a violation of § 6148 causes a promissory note or deed of trust to be invalidated, the Bankruptcy Court granted summary judgment in favor of McDonnell. *Id.*

On November 6, 2014, the bankruptcy court issued its order on McDonnell's summary judgment motion. Op., ECF 11-13. In the order, the Bankruptcy Court denied McDonnell's motion for summary judgement on Riley's first cause of action. *Id.* at 8-12. In a change of position from its tentative ruling, the Bankruptcy Court determined that whether the October 2009 e-mail put Riley on notice of fraud was a factual inquiry that could not be decided at summary judgment. *Id.* at 11-12. The Bankruptcy Court granted McDonnell's motion for summary judgment on Riley's second cause of action for the same reasons as in its tentative ruling. *Id.* at 12-13. The Bankruptcy Court entered its order on April 8, 2015. McDonnell filed a timely notice

1  of appeal on April 22, 2015, ECF 1, and Riley filed a timely notice of cross-appeal[2] on May 4,
2  2015, ECF 8-3.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 158(a)(1), a district court has jurisdiction to hear appeals of final orders. A final order is one that "ends litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Cameron*, Case No. 13-cv-02018-SI, 2014 WL 1028436, at *3 (N.D. Cal. March 17, 2014). In bankruptcy cases, the Ninth Circuit applies a "pragmatic approach" to finality and has held that an order is final where it "1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *In Frontier Properties, Inc.*, 979 F.2d 1358, 1362 (9th Cir. 2002). In an adversary proceeding, however, "an order is final if it would be considered an appealable final order in an ordinary federal civil action under 28 U.S.C. § 1291." *Cameron*, 2014 WL 1028436 at *3 (citing *In re King City Transit Mix, Inc.*, 738 F.2d 1065, 1066 (9th Cir. 1984) (holding that "the unique nature of a[n adversary] proceeding does not warrant a departure from final order jurisprudence developed in the context of 28 U.S.C. § 1291")).

Under "exceptional circumstances," a district court also has jurisdiction to hear appeals from interlocutory orders "with leave of the court." *In re Cement Antitrust*, 673 F.2d 1020, 1026 (9th Cir. 1982); 28 U.S.C. § 158(a)(3). When an appeal of an interlocutory order has been taken without leave from the bankruptcy court, the district court may "treat the notice of appeal as a motion for leave" to appeal. Bankruptcy Rule 8004(d). In determining whether an interlocutory order may be appealed, courts "look to the analogous provision of 28 U.S.C. § 1292(b), which governs appellate review by the Courts of Appeals of interlocutory district court orders." *In re Plant Insulation Co.*, Case No. 09-4222-RS, 2010 WL 1526320, at *2 (N.D. Cal. April 14, 2010). Under § 1292(b), interlocutory orders may be appealed only if (1) a controlling question of law is involved, (2) the order involves an issue about which there is substantial ground for difference of

---

[2] Although Riley's notice of cross-appeal did not indicate he wished to have his cross-appeal heard by a district court, ECF 8-3 at 2, because McDonnell chose to have his appeal heard by the district court, ECF 1 at 2, Riley's cross-appeal was also transmitted to the district court.

1    opinion, and (3) an immediate appeal may materially advance the ultimate termination of the
2    litigation. *In re Cement*, 673 F.2d at 1026.  The "party pursuing the interlocutory appeal bears the
3    burden of demonstrating" that the statutory requirements are met.  *Couch v. Telescope, Inc.*, 611
4    F.3d 629, 633 (9th Cir. 2010).

### III.  DISCUSSION

#### A.  McDonnell's Appeal

Since McDonnell has appealed an interlocutory order without leave from the bankruptcy court, the Court "treat[s] the notice of appeal as a motion for leave" to appeal.  Bankruptcy Rule 8004(d).  McDonnell argues that the Court should hear his interlocutory appeal of the Bankruptcy Court's denial of summary judgment on Riley's first cause of action for two reasons.  First, McDonnell claims that "a correct decision on the remaining fraud claim would substantially resolve the case and conserve court resources."  McDonnell Opening Br. 1-2, ECF 12.  Second, McDonnell notes the Bankruptcy Court's order on summary judgment contradicted its tentative ruling and argues that under either the tentative ruling's reasoning or order's reasoning, summary judgment should have been granted.  *Id.* at 2.  According to McDonnell, the Bankruptcy Court's tentative ruling held that Riley had notice of any fraud by October 2009, while the Bankruptcy Court's order held that McDonnell's October 2009 e-mail could have meant that McDonnell intended to keep his promise at the time it was made, "but then changed his mind two years later when Riley ha[d] still not paid."  *Id.*  If Riley had notice of any fraud by October 2009, then the statute of limitations would have ran and if instead, McDonnell intended to keep his promise, but changed his mind, there would be no fraud because McDonnell's initial promise was not made without any intention to perform it.  *Id.*

Riley, on the other hand, disagrees that the Bankruptcy Court's ruling on summary judgment is an interlocutory order and simply states that "jurisdiction is provided by 28 U.S.C. § 158" and the Bankruptcy Court's order "is final."  Riley Response 4, ECF 14.

As an initial matter, the Bankruptcy Court's order denying summary judgment is an interlocutory order and not a final order.  *Lum v. City and Cnty. of Honolulu,* 963 F.2d 1167, 1169 (9th Cir. 1992) (holding the "appropriate forum to review the denial of a summary judgment

1  motion is through interlocutory appeal under 28 U.S.C. § 1292(b)"). Thus, in determining
2  whether interlocutory appeal is appropriate, the Court addresses whether McDonnell's appeal
3  involves a controlling question of law, whether there is substantial ground for difference of
4  opinion, and whether an immediate appeal on that legal question may materially advance the
5  termination of the litigation.

### i. Controlling Question of Law

In order for a question to be controlling, "all that must be shown…is that resolution of the issue on appeal could materially affect the outcome of litigation in district court." *In re Cement*, 673 F.2d at 1026. "However, courts have repeatedly held that § 1292(b) was not meant to apply to cases in which the party opposing summary judgment had raised a genuine issue of material fact…" *Harris v. Vector Mktg. Corp.*, Case No. 08-CV-5198-EMC, 2009 WL 4050966, at *2 (N.D. Cal. Nov. 20, 2009) (collecting cases). "[T]he underlying issue of whether [Plaintiff] has presented sufficient evidence to show a genuine issue…[of] material fact, and thus avoid summary judgment under Fed. R. Civ. P. 56(c), is not a question of law within the meaning of § 1292(b)." *Id.* (quoting *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004) (internal quotations omitted)).

Based on McDonnell's statement of issues, he believes the controlling question of law involved in his appeal is whether Riley knew or should have known of any fraud in 2009 based on the several e-mails that McDonnell had sent him. McDonnell Opening Br. 2, ECF 12. However, the Bankruptcy Court concluded there was a disputed issue of fact about when Riley knew or should have known about potential fraud. Op. 16, ECF 8-3. As such, interlocutory appeal is not appropriate under § 1292(b). McDonnell appears to argue that the Bankruptcy Court did not find a disputed issue of material fact, but instead determined McDonnell's October 2009 e-mail indicated that McDonnell had changed his mind and was now going to enforce the deed of trust. McDonnell Opening Br. 5. McDonald's argument misinterprets the Bankruptcy Court's analysis. In explaining how the series of communications in 2009 gave rise to a disputed issue of fact, the Bankruptcy Court speculated as to how a reasonable factfinder could interpret those communications. *See* Op. 16, ECF 8-3. For example, the Bankruptcy Court suggested that the e-

mails (1) "did not necessarily put [Riley] on notice of fraud," (2) "could also have been simply a threat to put pressure on [Riley] to pay," or (3) indicated to Riley that McDonnell had changed his mind. Contrary to McDonnell's understanding of the Bankruptcy Court's ruling, the Bankruptcy Court did not actually find the e-mail gave rise to any of the preceding conclusions but rather, was illustrating how this situation presented an issue of fact that was not resolvable on summary judgment. Accordingly, given the factual inquiry needed in resolving McDonnell's appeal, McDonnell has not shown that this appeal involves a controlling question of law.

### ii. Substantial Ground for Difference of Opinion

The second factor under § 1292(b) is whether there is substantial ground for difference of opinion on the question at issue. McDonnell appears to believe there is a substantial ground for difference of opinion based on the fact that the Bankruptcy Court contradicted its tentative ruling. However, that is not sufficient to meet this factor. "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633 (internal quotations omitted). "However, just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id*. Simply disagreeing, even strongly disagreeing, with a court's ruling, is not sufficient for there to be a substantial ground for difference of opinion. *Id*. McDonnell has cited no California or federal case establishing that, based on the series of e-mails exchanged between the parties in 2009, Riley knew or should have known about potential fraud. Accordingly, McDonnell has not met this factor.

### iii. Materially Advance Ultimate Termination of Litigation

The final factor in determining whether to hear an interlocutory appeal is whether an immediate appeal "may materially advance the ultimate termination of litigation." This factor is met when resolution of the controlling question of law "may appreciably shorten the time, effort, or expense of conducting a lawsuit." *In re Cement Antitrust Litig.*, 673 F.2d at 1027. McDonnell

argues that a review of the Bankruptcy Court's denial of summary judgment would conserve court resources. The Court finds McDonnell has not carried his burden in showing that the hearing of an interlocutory appeal would materially advance the ultimate termination of litigation. Under McDonnell's reasoning, a party would be able to appeal every time summary judgment is denied even though interlocutory appeals should be heard only in exceptional cases. *In re Cement Antitrust*, 673 F.2d at 1026. As a result, McDonnell must do more than just note that granting summary judgment would end litigation. For example, McDonnell could have provided information about the length of trial or trial time that would be saved. *See* Wright & Miller, 16 Fed. Prac. & Proc. Juris. 2d § 3930 ("If trial of the case can be had in a few days, the possibility of saving relatively small amounts of trial-court time is not thought sufficient to justify immediate appeal."); *see also Stuart v. Radioshack Corp.*, Case No. 07-cv-4499-EMC, 2009 WL 1817007, at *4 (N.D. Cal. June 25, 2009). Thus, McDonnell has not shown that hearing his appeal would materially advance the ultimate termination of litigation.

Since McDonnell has not carried his burden under all three factors, the Court DENIES McDonnell's motion for leave to appeal the Bankruptcy Court's order.

### B. Riley's Cross-Appeal

Riley claims that his cross-appeal is "from an order from the [Bankruptcy Court] granting partial summary judgment, and is final." Riley Cross Appeal 4, ECF 13. McDonnell does not address the Court's jurisdictional basis for hearing Riley's cross-appeal. *See generally* McDonnell Response, ECF 17. Riley did not file a reply brief to his cross-appeal.

The Bankruptcy Court's order denied summary judgment on Riley's first cause of action, granted summary judgment on Riley's second and third causes of action, and dismissed Riley's fifth and sixth cause of action to the extent they were based on Riley's second and third causes of action. Op. 3-4, ECF 8-3. An order granting in part and denying in part summary judgment is not a final order. *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1074 (9th Cir. Feb. 18, 1994) ("It is axiomatic that orders granting partial summary judgment, because they do not dispose of all claims, are not final appealable orders under § 1291.").

As a result, Riley is cross-appealing an interlocutory order. Since Riley has appealed an

10

interlocutory order without leave from the bankruptcy court, the Court "treat[s] the notice of appeal as a motion for leave" to appeal. Bankruptcy Rule 8004(d). In order to hear Riley's appeal on an interlocutory basis, Riley must show this his appeal involves a controlling question of law, a substantial ground for difference of opinion, and whether legal question that may materially advance the termination of the litigation. Riley has failed to make any argument as to why his appeal meets the preceding three factors, and thus, has failed to carry his burden.

Moreover, the Court notes that Riley basis his cross-appeal on his view of the holding in *Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal. App. 4th 990, 996, 90 Cal. Rptr. 2d 665 (1999). Riley never cited this case or raised this argument to the Bankruptcy Court in opposing McDonnell's motion for summary judgment. Riley Cross Appeal 8-9, ECF 13. Riley tries to cover up this fact by misconstruing the bankruptcy proceedings below. According to Riley, the Bankruptcy Court issued a tentative decision on November 6, 2014, and then fearing no hearing would be allowed on the tentative decision, Riley filed a supplemental memorandum of points and authorities on December 12, 2014 that contained for the first time his argument based on *Iverson*. *Id*. at 9. According to Riley, the Bankruptcy Court issued its final order on April 7, 2015.

Riley's recap of the Bankruptcy Court proceeding is careless at best. The Bankruptcy Court did not issue a tentative decision on November 6, 2014 – it issued its tentative decision on August 19, 2014. Tentative Op., ECF 11-11. The Bankruptcy Court further allowed the parties to submit additional briefing on the issues raised in the tentative decision and set a hearing for September 19, 2014. *Id*. at 14. Riley did not submit any additional briefing nor bring the *Iverson* case to the Bankruptcy Court's attention. The Bankruptcy Court's November 6, 2014 order, contrary to Riley's characterization, was its final[3] order. Op., ECF 8-3. The Bankruptcy Court ordered the parties to submit a proposed order, *id*. at 19-20, and instead of doing so, Riley filed additional briefing that finally raised the *Iverson* case. At this point, Riley's additional briefing and arguments were untimely and Riley cannot raise on appeal, an argument he did not timely raise in the Bankruptcy Court. The Bankruptcy Court finally entered its order on April 8, 2015.

---

[3] For clarity, final in this context does not mean final for purposes of appeal under § 1291, but rather, a decision that is no longer tentative.

1  Op., ECF 8-3.

2      In any event, because Riley did not offer any argument as to why this Court should hear
3  his interlocutory appeal, Riley has failed to carry his burden, and the Court DENIES Riley's
4  motion for leave to appeal.

5  **IV.　ORDER**

6      For the foregoing reasons, IT IS HEREBY ORDERED that:

7      1.　McDonnell's motion for leave to appeal is DENIED.

8      2.　Riley's motion for leave to cross-appeal is DENIED.

9      **IT IS SO ORDERED.**

10  Dated: February 16, 2016

_____
BETH LABSON FREEMAN
United States District Judge